UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| H. BRIAN MAYNARD, LIQUIDATOR OF KENTUCKY HEALTH COOPERATIVE, INC., | ) ) ) | |
| | ) | Civil No: 3:16-cv-0037-GFVT |
| Plaintiff, | ) ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | **&** |
| | ) | **ORDER** |
| CGI TECHNOLOGIES AND SOLUTIONS, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This case begins where all must, with a review of the Court's power to decide the dispute presented. All agree that the prerequisites for diversity jurisdiction exist.  That typically would settle the matter unless, as urged by the Plaintiff, this is a case in which the Commonwealth of Kentucky has enacted statutory language that voids federal diversity jurisdiction.  No federal court of appeals has concluded that is possible in this context and, for the reasons set out below, neither will this district court.

With the power to decide a case courts have the responsibility to do just that.  In rare circumstances federal courts may abstain from exercising that power, but this is not one of them.  So, as explained below, this is a contract case.  The contract is clear and the parties agreed to arbitrate when faced with such a dispute as this, but the law that is to be used is unclear.  Consequently, Plaintiff Maynard's Motion to Remand [**R. 18**] is **DENIED** and the parties are ordered to provide additional briefing on the issues described below.

**I**

In February of 2013, CGI Technologies and Solutions, Inc. and Kentucky Health Cooperative, Inc. (KYHC) entered into an Administrative Services Agreement (ASA) where CGI agreed to fulfill administrative and management services for KYHC.  [R. 1-1 at 9.]  Liquidator Maynard alleges that the KYHC became insolvent by October 2015 due to acts of negligence and gross negligence that constituted a breach of the ASA on behalf of CGI.  [R. 19-1 at 4.]  The KYHC was placed into liquidation pursuant to Kentucky's Insurers Rehabilitation and Liquidation Law (Kentucky's IRLL) and H. Brian Maynard was appointed Liquidator of the KYHC due to his role as Commissioner of the Kentucky Department of Insurance.  [*Id.*]

A State Court Action was then filed by Plaintiff Maynard in Franklin Circuit Court.  [R. 1-1 at 3.]  The Liquidator's State Court Action was removed by CGI to this Court and a separate action was brought by CGI in federal court to compel arbitration. [R. 19-1 at 4.]  These are the two actions that were consolidated earlier this year.  [R. 8.] Since the pending motions have been taken under advisement, yet another related case was filed and removed.  *See Jeff Gaither, Deputy Liquidator of Kentucky Health Cooperative, Inc. v. Beam Partners, LLC, et al.*, 3:16-cv-00094-GFVT, filed December 1, 2016.  CGI Technologies and Solutions, Inc. states that this is a "copycat state action" that has been filed by the Liquidator.  [R. 1 at 2 in 3:16-cv-094-GFVT.]  Full briefing in that case remains pending.

**II**

**A**

The Liquidator challenges the Court's power to decide this case with a motion to remand. [R. 18.] A defendant may remove a civil action brought in state court to federal court only if the action is one over which the federal court could have exercised original jurisdiction. *See* 28 U.S.C. §§ 1441, 1446. This court has original federal question jurisdiction over civil actions which arise under the "Constitution, laws, or treaties" of the United States, 28 U.S.C. § 1331. This Court also has original "diversity" jurisdiction over all civil actions when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between" parties who are "citizens of different states." *See* 28 U.S.C. § 1332(a).

Because federal courts are courts of limited jurisdiction, any doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941); *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F. Supp. 1305, 1307 (E.D. Ky. 1990) (citations omitted). In determining the appropriateness of remand, a court must consider whether federal jurisdiction existed at the time the removing party filed the notice of removal. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). Furthermore, the removing defendant bears the burden of showing that removal was proper. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993), *rev'd on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010); *Fenger v. Idexx Laboratories*, 194 F. Supp. 2d 601, 602 (E.D. Ky. 2002) (citations omitted).

3

Plaintiff Maynard's motion to remand attacks CGI's removal of this case on two specific grounds that heavily rely on persuasive, not mandatory, jurisprudence. Specifically, Liquidator Maynard contests CGI's claims that this Court has diversity jurisdiction. In support, Maynard claims that Kentucky's Insurers Rehabilitation and Liquidation Law vests exclusive jurisdiction for this liquidation in Franklin Circuit Court "reverse preempting" federal diversity jurisdiction. *See Ernst & Young, LLP v. Clark*, 323 S.W.3d 682, 684 (Ky. 2010); *see also* McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015. Alternatively, the Liquidator argues that this Court should abstain from exercising jurisdiction.

**1**

Both parties agree that the "fundamental tenets of diversity jurisdiction" are present. [R. 30 at 10.] As required by 28 U.S.C. § 1332(a)(1), there is complete diversity amongst the parties. CGI Technologies and Solutions Inc. is a business incorporated in Delaware with a principal place of business in Virginia. [R. 1 at 1.] Brian Maynard is the court-appointed liquidator of the KYHC which is a Kentucky non-profit corporation that has its principal place of business in Kentucky. [*Id.*] The amount in controversy, as evidenced by the complaint and administrative services agreement, [*See* R.1] far exceeds $75,000. 28 U.S.C. § 1332(b). Therefore, under a traditional analysis of diversity jurisdiction, this court has the requisite authority and subject-matter jurisdiction to adjudicate this dispute.

Despite these uncontested facts, the question presented is whether federal law has opened the door for state law to "reverse preempt" the diversity jurisdiction statute. It is

4

certainly conceivable that Congress could act through the McCarran-Ferguson Act to to limit federal jurisdiction in narrow circumstances, but that was not done here.

The McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015 was enacted by Congress to prevent general federal laws from interfering with state insurance regulations. *See AmSouth Bank v. Dale*, 368 F.3d 763, 780 (6th Cir. 2004) ("[a] general federal law that does not specifically relate to the business of insurance, therefore, cannot be construed to 'invalidate, impair, or supersede' a state law enacted to regulate the insurance business.") The text of the Act states that "no Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance … unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The Supreme Court of the United States clarified that McCarran-Ferguson was enacted by Congress using Commerce Clause authority as derived in Article 1, Section 8 of the United States Constitution. *See Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 428 (2003) ("As the text itself makes clear, the point of McCarran-Ferguson's legislative choice of leaving insurance regulation generally to the states was to limit congressional preemption under the commerce power, whether dormant or exercised.") Therefore, the McCarran-Ferguson Act is limited to "reverse preempting" legislation passed through Congress' Commerce Clause authority. *Id.*

The Liquidator seeks to expand the existing McCarran-Ferguson "reverse preemption" framework to prevent CGI from exercising their right of removal pursuant to 28 U.S.C. § 1441. [*See* R. 18-1 at 2.] However, the Constitution prevents this Court from ruling so expansively. *See, e.g.*, *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 881 (1985) ("Although the McCarran-Ferguson Act exempts the insurance industry from

Commerce Clause restrictions, it does not purport to limit in any way the applicability of the Equal Protection Clause"); *Amsouth Bank v. Dale*, 386 F.3d 736, 783 (6th Cir. 2004) ("[C]ourts tend to look unfavorably on claims of McCarran-Ferguson preemption of … the removal statutes so as to insulate that action from the federal courts.")  As stated in CGI's Combined Response [R. 23], "to CGI's knowledge, every federal court of appeals— the Sixth, along with the Third, Fourth, Fifth, Eighth, Ninth, and Tenth Circuits— to address the question has either categorically rejected or expressed skepticism that McCarran-Ferguson even applies to the diversity jurisdiction statute." [R. 23] (referencing multiple federal court of appeals cases including *Amsouth Bank v. Dale*, 386 F.3d 763, 783 (6th Cir. 2004); *Dykhouse v. Corp Risk Mgmt. Corp.*, No. 91-1646, 1992 WL 97952 *2 n.9 (6th Cir. May 8, 1992) (unpublished *per curiam* decision); *Hawthorne Savs. F.S.B. v. Reliance Ins. Co. of Ill.*, 421 F.3d 835, 843 (9th Cir. 2005), *Gross v. Weingarten*, 217 F.3d 208, 222 (4th Cir. 2000); *Munich Am. Reins. Co. v. Crawford*, 141 F.3d 585, 595-96 (5th Cir. 1998); Murff v. Prof'l Med. Ins. Co.*, 97 F.3d 289, 293 (8th Cir. 1996)).

After further research the Court found one example of McCarran-Ferguson "reverse preempting" federal diversity jurisdiction.  *See Western Ins. Co. v. A and H Ins., Inc.*, 784 F.3d 725 (10th Cir. 2010).  In *Western Ins. Co.*, Western Insurance became insolvent and was liquidated pursuant to the Utah Insurer Receivership Act.  *Id.* at 726. The district court in this matter appeared to intertwine analysis of McCarran-Ferguson with discussions of abstention.  *Id.* at 728-29 ("the court proceeded to mix the two doctrines by referring to abstention under the McCarran-Ferguson Act") (internal quotation marks omitted).  The appellate court in this case determined that the district

court had abstained due to McCarran-Ferguson "reverse preemption" and that the "order was 'based to a fair degree' upon lack of subject matter jurisdiction." *Id.* at 729. Accordingly, the Court of Appeals was unable to rule on the merits of the district court's analysis as they lacked appellate jurisdiction to review the district court. *Id.* Even in light of *Western Ins. Co.*, this Court has been unable to find a Court of Appeals decision that permits federal diversity jurisdiction to be "reverse preempted" by the McCarran-Ferguson Act.

There are important Constitutional reasons why this is the case. Federal diversity jurisdiction, 28 U.S.C. § 1332, and the removal mechanism available in 28 U.S.C. § 1441, were enacted by Congress through its authority under Article 1, Section 8, Clause 9 ("To constitute Tribunals inferior to the Supreme Court") and Article III of the United States Constitution. Accordingly, the framework established by McCarran-Ferguson does not apply when it comes to federal diversity jurisdiction.

Moreover, consistent with the Supremacy Clause, U.S. Const., Art. VI, cl. 2, federal jurisdiction prevails over conflicting state forum provisions. *See also Fidelity Federal Sav. And Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-153 (1982). The Supremacy Clause states that, "the Laws of the United States which shall be made in Pursuance" of the Constitution "shall be the supreme Law of the Land." U.S. Const., Art. VI, cl. 2. As stated in *State Farm Bank v. Reardon*, "[c]onflict preemption occurs where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *State Farm Bank v. Reardon*, 539 F.3d 336, 342 (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)) (internal quotation

marks omitted).  In the case at hand, application of the Kentucky IRLL's exclusive jurisdiction provision would directly conflict with federal law, therefore, the IRLL jurisdiction provision must be preempted by the federal removal and diversity subject matter jurisdiction statutes resulting in this Court being appropriately vested with the subject-matter jurisdiction needed to adjudicate this dispute.

**2**

Even though this Court has concluded it has the power to decide this case, Liquidator Maynard requests that the Court abstain from using it.  [*See* R. 19-1 at 15.]  In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), the Supreme Court recognized that situations exist where a federal court should abstain from exercising jurisdiction over a case that "involves substantially the same issues and substantially the same parties as a parallel case in state court."  *Total Renal Care, Inc. v. Childers Oil Co.*, 743 F. Supp. 2d 609, 612 (E.D. Ky. 2010) (citing *Colorado River*, 424 U.S. at 817-21.)  However, because "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress," *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996), abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189 (1959)); s*ee also Gray v. Bush*, 628 F.3d 779, 783 (6th Cir. 2010). For this reason, "[o]nly the 'clearest of justifications' will support abstention." *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013) (quoting *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002)).

The Supreme Court summarized these concepts by stating that:

> [u]ltimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and competing concern for the independence of state action, that the State's interests are paramount and that a dispute would best be adjudicated in a state forum.

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996).

*Quackenbush* also stands for the proposition that "[F]ederal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." Quackenbush, 517 U.S. at 731. This very Court has, in a previous ruling, applied the above cited precept to a *Colorado River* abstention analysis to conclude that, "Plaintiffs have requested monetary damages; therefore, this Court may not remand based on abstention principles." *Barbourville Diagnostic Imaging Ctr. v. Philips Med. Sys., Inc.,* No. CIV. 12-191-GFVT, 2014 WL 1603558, at *2 (E.D. Ky. Apr. 21, 2014).  In *Barbourville Diagnostic v. Philips Med. Sys., Inc.*, this Court determined that it was "without power to dismiss the Counterclaim on abstention principles," because "[t]he parties do not seek equitable or discretionary relief… [r]ather they both request monetary damages." *Id.*  Similarly, in the instant action, the Liquidator's demand for damages precludes this Court from abstaining under the *Colorado River* doctrine.[1]

Abstention is also not proper under *Burford v. Sun Oil Co*., 319 U.S. 315 (1943). In *Quackenbush*, the Supreme Court states that, "*Burford* permits a federal court sitting in equity to dismiss a case only in extraordinary circumstances," and that damages actions

---

[1] *Colorado River* Abstention is inappropriate even after consideration of the "copycat" state action, *Jeff Gaither, Deputy Liquidator of Kentucky Health Cooperative, Inc. v. Beam Partners, LLC, et al.*, 3:16-cv-00094-GFVT, filed December 1, 2016, because that action has been removed to Federal Court, is no longer a parallel state proceeding, and because damages are requested by the Plaintiff in the instant action.

are generally, but not always, inappropriate circumstances for application of *Burford* abstention. *Quackenbush*, 517 U.S. at 726. Later, the Court clarified that, "we have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether." *Id.* at 730. In the rare instances where *Burford* abstention may be appropriate in damages actions, the Court states that, "*Burford* might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law." *Id.* The Sixth Circuit has more directly interpreted *Quackenbush* to illustrate the principle that, "…*Burford* abstention does not apply to suits seeking damages." *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 662 (6th Cir. 2002) (referencing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996)).

Ordinarily, a federal court is expected to exercise its power to adjudicate disputes between parties when the issue is justiciable and the court has proper jurisdiction over the subject matter and individuals. *See Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (stating that there is a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"); s*ee also England v. Louisiana State Bd. Of Medical Examiners*, 375 U.S. 411, 415 (1964). The Supreme Court has developed a number of doctrines that allow for lower courts to abstain from hearing a case in various situations where state courts or alternative means of political persuasion are considered more appropriate. *See, e.g.*, *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941); *Younger v. Harris*, 401 U.S. 37 (1971); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959); *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976); *Baker v. Carr*, 369

U.S. 186 (1962); *Nixon v. United States*, 506 U.S. 224 (1993).  But, despite these

doctrines, there is a tension that arises when a federal court chooses to abstain from

ruling, to withhold its adjudicatory power, despite being vested with authority.  Chief

Justice Marshall illustrates this tension and the obligation of federal courts when he

stated, "[w]e have no more right to decline the exercise of jurisdiction which is given,

than to usurp that which is not given."  *Cohens v. Virginia*, 19 U.S. 264, 404 (1821).

   The rare circumstance where abstention is appropriate generally occurs when

federal and state courts exercise concurrent jurisdiction and "principles of federalism and

comity dictate" that the federal court should withhold judgment.  *Growe v. Emison*, 507

U.S. 25, 32 (1993).  Even legal commentators recognize that it is difficult for Federal

Courts to choose not to exercise their authority and that to justify abstention the courts

have traditionally relied on equitable principles.  *See, e.g.*, Kade N. Olsen, *Burford*

*Abstention and Judicial Policymaking*, 88 N.Y.U. L. Rev. 763 (2013) (explaining how

reliance on equitable principles in abstention has resulted in doctrinal confusion amongst

the Circuit Courts and suggesting alternative methods for grounding academic and

practical understanding of abstention doctrines); *see also Adkins v. VIM Recycling, Inc.*,

644 F.3d 483, 496 (7th Cir. 2011); *Chico Serv. Station, Inc. v. Sol P.R. Ltd.*, 633 F.3d 20,

31 (1st Cir. 2011); *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621

F.3d 554, 562 (6th Cir. 2010) (holding that *Burford* abstention is improper and that "state

interests are outweighed by the strong federal interest in affording foreign litigants a

neutral forum for the adjudication of state law claims against them.")  Since this Court,

courts in the Eastern District of Kentucky, and the Sixth Circuit Court of Appeals rely

heavily, if not solely, on equitable principles to justify abstention, extension of those

11

same equitable principles to contract based damages actions is not appropriate. *See, e.g.*
*Barbourville Diagnostic Imaging Ctr. v. Philips Med. Sys., Inc.,* No. CIV. 12-191-GFVT,
2014 WL 1603558, at *2 (E.D. Ky. Apr. 21, 2014) (holding that because parties are
seeking monetary damages the Court does not have power to abstain); *Woody's Rest.,*
*LLC v. Travelers Cas. Ins. Co. of Am.*, 2013 Wl 5503194 (E.D. Ky. Oct. 1, 2013)
(quoting *Quackenbush,* 517 U.S. at 731, "Federal courts have the power to dismiss or
remand cases based on abstention principles only where the relief being sought is
equitable or otherwise discretionary."))

        In this case, Liquidator Maynard "contends that he is entitled to receive the
following damages from CGI: compensatory damages, punitive damages, all
administrative costs incurred as a result of the rehabilitation and liquidation proceedings,
attorneys' fees and costs, interest, and the recovery of all fees paid by KYHC to CGI
under the ASA." [R. 1 at 3.] Since the complaint alleges common law contract damages,
these "money damages for an alleged breach of contract is of a classic legal nature."
*Nichols v. Vesta Fire Ins. Corp.*, 56 F. Supp. 2d 778. Therefore, since this case is really a
damages action and the Court has subject-matter jurisdiction, this Court shall exercise the
authority it has been granted and will refuse to exercise the discretion to abstain.

**B**

        Turning to the merits, the threshold issue in this consolidated action is not
whether there was a breach of the ASA nor whether liquidation of the KYHC was due in
any part to CGI's action or inaction, but rather, what substantive law governs
adjudication of this dispute. CGI argues that Article 7 of the Administrative Service
Agreement, the "Dispute Resolution" clause, governs and contains language that states,

12

"If any controversy, dispute, or claim, ("Dispute") between the Parties arises out of or relates to this Agreement which the parties cannot settle by good faith negotiation between them … the Parties agree that the Dispute shall be resolved by mediation or arbitration." [R. 9-1 at 2.] CGI further argues that the Federal Arbitration Act compels this court to enforce the binding arbitration agreement that was signed by both parties. [*Id.* at 4.]

The Liquidator argues that the FAA conflicts with the provisions of the Kentucky IRLL which, as noted, provides for exclusive jurisdiction in state court thereby under the teachings of McCarran-Ferguson "reverse preempting" the FAA. [R. 19-1 at 9.] This in large measure is the conclusion reached by the Kentucky Supreme Court's opinion in *Earnst & Young, LLP v. Clark*, 323 S.W.3d 682 (Ky 2010), which describes the United States Supreme Court's three-part test to determine when federal law is "reverse preempted" by McCarran-Ferguson: "The test is whether: 1) the statute was enacted for the purpose of regulating the business of insurance; 2) the federal statute involved 'does not specifically relat[e] to the business of insurance'; and 3) the application of the federal statute would 'invalidate, impair, or supersede' the state statute." *Earnst & Young*, 323 S.W.3d at 688 (citing *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999); [R. 19-1 at 5.]

The Kentucky Supreme Court concluded that "[t]here can be no reasonable doubt that the IRLL … was enacted to regulate the business of insurance." *Earnst & Young*, at 688-89. The Liquidator argues that, accordingly, the first prong of the test is satisfied. Further, the Liquidator argues that the second prong of the *Forsyth* test is satisfied because the FAA does not "specifically relat[e] to the business of Insurance." *Earnst & Young*, at 689. Finally, the Liquidator argues that the third prong of the test is satisfied

because the Kentucky IRLL prevents arbitration whereas the FAA would compel arbitration. [*See* R. 19-1 at 9-10.] The IRLL states "If there is a delinquency proceeding… the provisions of this subtitle shall govern those proceedings, and all conflicting contractual provisions contained in any contract between the insurer which is subject to the delinquency proceeding and any third party shall be deemed subordinated to the provisions of this subtitle…" Ky. Rev. Stat. § 304.33-010(6). This, the Liquidator argues, in conjunction with the IRLL exclusive jurisdiction provision, would "invalidate, impair, or supersede Kentucky's IRLL". [R. 19-1 at 11.] The Kentucky Supreme Court ruled that the McCarran-Ferguson Act and Kentucky IRLL did prevent enforcement of an arbitration agreement in part because,

> "Such a substantial reduction of the court's role in a process central to the rehabilitation of an insurance company is inconsistent with our legislature's extensive grant of exclusive jurisdiction to the Franklin Circuit Court. The General Assembly did not intend for that grant of jurisdiction [from the IRLL] to be overruled by an insurance company's agreement to arbitrate issues critical to the state's interest in the rehabilitation or liquidation of the insurance company."

*Earnst & Young*, at 691.

According to CGI, since "[t]he Liquidator admits that the exclusive-jurisdiction and contractual-subordination provisions operate 'in conjunction' to invalidate arbitration clauses… if the exclusive-jurisdiction provision is preempted, then the contractual-subordination provision cannot function independently to preclude enforcement of an arbitration clause." [R. 23 at 11.] So, having determined that the exclusive-jurisdiction provision of the Kentucky IRLL fails to "reverse preempt" federal diversity jurisdiction, the CGI argument suggests that the arbitration provision is back in force. Hence, the question of whether the contractual-subordination provisions can invalidate the

14

arbitration clause is more appropriately framed as a question of what law shall be applied. The parties agreed in the ASA that, "[t]his Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky without giving effect to the principles of conflicts of law." [R. 9-2 at 25.] The Court was also directed by both parties to Ky. Rev. Stat. § 304.33-010(6) but previous briefs failed to include the statute in its entirety:

> (6) If there is a delinquency proceeding under this subtitle, the provisions of this subtitle shall govern those proceedings, and all conflicting contractual provisions contained in any contract between the insurer which is subject to the delinquency proceeding and any third party shall be deemed subordinated to the provisions of this subtitle. However, notwithstanding the foregoing, in any delinquency proceeding commenced against an insurer after July 15, 1996, **nothing in this subtitle shall be construed to subordinate or restrict the rights of parties to submit their disputes to arbitration** pursuant to a contractual arbitration clause contained in a reinsurance agreement**.**

Ky. Rev. Stat. § 304.33-010(6) (LexisNexis, Lexis Advance through the 2016 Legislative Session) (emphasis added).

CGI argues, in brief [R. 24 at 8] and at oral argument [R. 30 at 27], that this action was a collateral proceeding, not a core delinquency proceeding. Liquidator Maynard stated that, "Kentucky's IRLL defines 'delinquency proceedings' as 'any proceedings commenced against an insurer for the purpose of liquidating, rehabilitating, reorganizing, or conserving such insurer." [R. 19 at 7] (quoting Ky. Rev. Stat. § 304.33-030(5)). Further, "this includes tort actions to recover an insurer's assets for purposes of liquidation or rehabilitation." *Id.* (referencing *Ernst & Young*, 323 S.W.3d at 684.) On the other hand, a collateral proceeding is "not part of the underlying delinquency proceeding, which the IRLL expressly defines as an action by the Commissioner "against" a financially-troubled insurer." [R. 24 at 13-14 citing KRS § 304.33-030(5).]

Even if this consolidated action were to be a collateral proceeding or not technically part of a "reinsurance agreement," the Ky. Rev. Stat. § 304.33-010(6) may better illustrate the Kentucky General Assembly's intent to allow enforcement of arbitration agreements, rather than preemption of those agreements, in reinsurance contracts when binding arbitration agreements have been made and agreed to between the parties.

### III

Because this Court has found that its subject-matter jurisdiction has not been "reverse preempted" by application of the Kentucky IRLL through the McCarran-Ferguson Act and that this court has federal diversity jurisdiction, the Motion to Remand will be denied.  After reviewing the parties' arguments and relevant abstention doctrines, this Court has a duty to exercise its jurisdiction and will not abstain.  Nevertheless, further briefing is required on which law shall apply.  Once supplemental briefing has been filed, the Court will schedule an Oral Argument as requested by Commissioner Maynard.  [R. 48.]  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff Maynard's Motion to Remand [**R. 18**] is **DENIED**; and

2. Within **twenty-one (21) days** from the date of entry of this order, the parties **SHALL FILE** additional briefing, not to exceed **fifteen (15) pages** in length, on the limited issues of:

   a. Whether the Kentucky IRLL and Ky. Rev. Stat. § 304.33-010(6) allow enforcement of the ASA Article 7 "Dispute Resolution" Arbitration agreement; and/or

    b.   Whether the FAA can apply in light of the parties "Governing Law"

        Agreement that restricts the Court to the laws of the Commonwealth of

        Kentucky; and/or

    c.   Any relevant argument the parties wish to raise within the prescribed page

        limit that specifically addresses choice of law.

This the 3rd day of January, 2017.

Gregory F. Van Tatenhove
United States District Judge