UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| NANCY G. ATKINS, LIQUIDATOR OF KENTUCKY HEALTH COOPERATIVE, INC., | ) ) ) ) | Civil No: 3:16-cv-0037-GFVT |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| CGI TECHNOLOGIES AND SOLUTIONS, INC., | ) ) ) | |
| Defendant. | ) | |

*** *** *** ***

This Court has an obligation to exercise jurisdiction granted to it by Congress. Having determined that such jurisdiction exists, and, having determined that Kentucky law does not reverse preempt the Federal Arbitration Act, the Liquidator asks this Court to abstain from exercising jurisdiction. However, no "exceptional circumstances" exist in this case where such abstention would be appropriate. For the foregoing reasons, CGI's Motion to Compel Arbitration is **GRANTED** and the Liquidator's Motion to Dismiss is **DENIED**.

**I**

The Kentucky Health Cooperative (KYHC) sought approval from the Center for Medicare and Medicaid Services (CMS) to offer health plans to Kentucky citizens in 2011 and 2012. Shortly thereafter, KYHC contracted with CGI Technologies and Solutions, Inc., whereby CGI would provide administrative services as an independent contractor for KYHC. [R. 71-1.] This Administrative Services Agreement included a section where parties agreed to arbitrate claims and disputes arising under or relating to the Agreement. [R. 9-2 at 27–28.]

Similarly, KYHC contracted with Milliman, Inc., for Milliman to perform actuary and consulting services to KYHC [*Milliman, Inc., v. Roof*, 3:18-cv-000012-GFVT, R. 1-2], and around the same time, KYHC contracted with Beam Partners, LLC, for Beam to provide management and support services to KYHC [*Beam Partners, LLC v. Atkins*, 3:17-cv-00004-GFVT; R. 4-2].

KYHC issued its initial health plan policy on January 1, 2014, but by late 2015, KYHC was insolvent and placed into rehabilitation by Franklin Circuit Court in Franklin County, Kentucky. [R. 9-1 at 3.] Pursuant to KRS § 304.33-010, *et seq.*, Franklin Circuit Court placed KYHC into liquidation on January 15, 2016, and appointed H. Brian Maynard, Commissioner of the Kentucky Department of Insurance, as the Liquidator. *Id.* Jeff Gaither and David Hurt were appointed as Special Deputy Liquidators. Pursuant to the Liquidation Order,

> The Liquidator and the Special Deputy Liquidators are hereby authorized to deal with the property, business, and affairs of KYHC and KYHC's estate, and in any necessary forum, to sue or defend for KYHC, or for the benefit of KYHC's policyholders, creditors, or shareholders in the courts and tribunal, agencies or arbitration panels of this states and other states, or in any applicable federal court in the Liquidator's name as Commissioner of the Kentucky Department of Insurance, in his capacity as Liquidator, or a Special deputy in his capacity as Special Deputy Liquidator, or in the name of KYHC.

[R. 34-6 at 9.] Since that time, Nancy G. Atkins has replaced H. Brian Maynard as Commissioner of the Kentucky Department of Insurance, and thus also as the Liquidator. See KRS § 304.33-200. Donald Roof was also appointed as a Deputy Litigator for KYHC on August 14, 2017. [*Milliman, Inc., v. Roof*, 3:18-cv-00012-GFVT, R. 1 at 2.]

On May 13, 2016, the Liquidator sued CGI in Franklin Circuit Court for breach of contract and negligence. [R. 71-1 at 2.] The Liquidator refused to honor the arbitration clause, so CGI removed that claim to this Court and filed a Petition to Compel Arbitration. Id. These actions were consolidated here. [R. 8.] Six months later, the Liquidator sued Beam Partners and

2

Terry Shilling, along with Janie Miller,[1] Joseph E. Smith,[2] the Officers and Board of Directors of KYHC, and CGI for similar breach of contract and tort claims. [*Beam Partners, LLC v. Atkins*, 3:17-cv-00004-GFVT; R. 4-4.] The Liquidator again refused to arbitrate, and CGI removed that action to this Court. [*Jeff Gaither, Deputy Liquidator of Kentucky Health Cooperative, Inc. v. Beam Partners, LLC, et al.*, 3:16-cv-00094-GFVT, R. 1.] Beam Partners then filed a Petition to Compel Arbitration. [*Beam Partners, LLC v. Atkins*, 3:17-cv-00004-GFVT; R. 1.]

In this case, the Liquidator sought remand to Franklin Circuit Court. KYHC is a Kentucky non-profit corporation with a principal place of business in Kentucky, while CGI is a business incorporated in Delaware with a principal place of business in Virginia. [R. 1 at 1.] The amount in controversy exceeds $75,000. *Id*. Accordingly, under a traditional analysis of diversity jurisdiction, this Court has requisite authority and subject-matter jurisdiction. 28 U.S.C. § 1332(b). However, the Liquidator sought remand for reverse preemption. [R. 49 at 3–4.] Early in 2017, this Court determined that federal diversity jurisdiction was not reverse preempted by application of the Kentucky Insurers Rehabilitation and Liquidation Law (IRLL) through the McCarran–Ferguson Act. *Id*. at 16. Accordingly, the Liquidator's Motion to Remand was denied. *Id*.

Meanwhile, in *Gaither v. Beam*, the Liquidator sought remand for the contract and tort action. In *Gaither*, however, there was not complete diversity, as both plaintiffs and several defendants were residents of Kentucky. [*Jeff Gaither, Deputy Liquidator of Kentucky Health Cooperative, Inc. v. Beam Partners, LLC, et al.*, 3:16-cv-00094-GFVT, R. 44 at 6.] Ultimately, this Court declined to sever the claims against the nondiverse parties and remanded for lack of jurisdiction. *Id*. at 30.

---

[1] Individually and as Chief Executive Officer of KYHC
[2] Individually and as Chairman of the Board of Directors for KYHC

After these developments, this Court denied CGI's Motion to Compel Arbitration without prejudice and directed the parties to re-brief the issue based on the significantly altered procedural posture, as *Gaither v. Beam* had now been remanded but *Atkins v. CGI Techs. & Sols., Inc.*, had not. [R. 63.] Instead, CGI appealed the Court's Order to the Sixth Circuit Court of Appeals. [R. 67.]

On February 9, 2018, the Sixth Circuit vacated this Court's Order denying CGI's Motion to Compel Arbitration and remanded for further proceedings. *Atkins v. CGI Techs. & Sols., Inc.*, 724 F. App'x 383 (6th Cir. 2018). The Court of Appeals reviewed only this Court's denial of the Motion to Compel Arbitration and did not review any decision involving abstention. *Id.* at 388. Accordingly, the Circuit Court determined that denial of the Motion to Compel Arbitration was not proper insofar as it was based on reverse preemption under Kentucky's IRLL. *Id.* at 390–93. Because the case had been removed from state court and this Court had denied remand, the purposes served by the exclusive jurisdiction provision of the IRLL did not apply, and state interests could not trump federal interests in the disposition of the case. *Id.* CGI subsequently filed a renewed motion to compel arbitration [R. 71] and the Liquidator filed a renewed motion to dismiss [R. 73].

While removing the issue of reverse preemption from this case, the Sixth Circuit did not resolve the other pending issues, nor did the Sixth Circuit resolve the issue of reverse preemption in Beam v. Atkins or in Milliman v. Roof. The parties appeared before this Court on July 23, 2018, for oral argument. [R. 87.][3]

---

[3] Contemporaneous with this Opinion and Order, the Court issued an Opinion and Order in *Beam v. Atkins* to resolve similar issues.

4

## II

### A

As an initial matter, the Liquidator challenges this Court's ability to hear this action by claiming the prior exclusive jurisdiction doctrine bars jurisdiction. [R. 73 at 7.] The doctrine of prior exclusive jurisdiction states, "If two suits are in rem or quasi in rem, so that the court must have possession or some control over the property in order to grant the relief sought, the jurisdiction of one court must yield to that of the other." *Cartwright v. Garner*, 751 F.3d 752, 761 (6th Cir. 2014.) This Court must assess "whether the doctrine of prior exclusive jurisdiction applies at the time of filing, and not any time thereafter." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 803 (6th Cir. 2015).

*In rem* jurisdiction involves or determines "the status of a thing, and therefore the rights of persons generally with respect to that thing." *Black's Law Dictionary* (10th ed. 2014). Conversely, *in personam* jurisdiction involves or determines "the personal rights and obligations of the parties" and is "brought against a person rather than a property." *Black's Law Dictionary* (10th ed. 2014). "A normal action brought by one person against another for breach of contract is a common example of an action *in personam*." R.H. Graveson, Conflict of Laws, 98 (7th ed. 1974).

If the Liquidator is successful in its tort claims against CGI, the Liquidator will likely be able to collect monetary damages from CGI, thus increasing the amount of assets that can be distributed among its creditors. However, the Liquidator has not provided sufficient case law to convince the Court that this results in an *in rem* action governed by the prior exclusive jurisdiction doctrine. The cases cited by the Liquidator involve creditors suing the insolvent company, whereas in the tort action here, the insolvent company is the plaintiff. *See Gillis v.*

*Keystone Mut. Cas. Co.*, 172 F.2d 826 (6th Cir. 1949); *Blackhawk Heating & Plumbing Co. Inc. v. Geeslin*, 530 F.2d 154 (7th Cir. 1976). By the Liquidator's logic, all suits brought by an insolvent company would need to be heard by the court of liquidation simply because those suits could increase assets available for distribution during liquidation.

The Court is not convinced. This is a petition to compel arbitration for a tort claim involving a breach of contract. A favorable result in this matter does not affect the distribution of the liquidated assets held in Franklin Circuit Court. Nor does the Court need to have jurisdiction over the assets to resolve this matter. Thus, the Court finds that the doctrine of prior exclusive jurisdiction does not apply here.

**B**

The Liquidator also challenges the Court's power to hear this matter, claiming that CGI has not complied with Kentucky's requirements for pursuing arbitration, and this Court cannot grant or deny relief without CGI fully complying with Kentucky's arbitration requirements. [R. 73 at 13.] Under the IRLL, no party may institute an action against the liquidator without approval of the court. KRS § 304.33-270(1). However, the Federal Arbitration Act does not require parties to comply with state requirements before seeking a petition from federal court for arbitration. See 9 U.S.C. § 4. Requiring CGI to comply with the IRLL before petitioning this Court assumes that the IRLL reverse preempts the Federal Arbitration Act in this case, which the Sixth Circuit has already rejected. See Atkins v. CGI Techs. & Sols, Inc., 724 F. App'x 383 (6th Cir. 2018).

# C

## 1

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, "manifests a liberal federal policy favoring arbitration agreements." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) (internal quotation marks omitted). Section 2 of the FAA states that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Under § 4, when a party is "aggrieved by the failure of another party to arbitrate under a written agreement for arbitration," that party "may petition a federal court for an order directing that such arbitration proceed in the manner provided for" by the contract. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4) (internal quotation marks omitted). According to the United States Supreme Court, the FAA "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Id.* at 67 (internal citations omitted); *see also AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Under the FAA, when contracts contain arbitration clauses, federal courts "are to examine the language of the contract in light of the strong federal policy in favor of arbitration," and are required to resolve any ambiguities in the agreement or doubts as to the parties' intentions in favor of arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (explaining that when the contract in question contains an arbitration clause, courts should presume arbitraibility and should not deny an order to arbitrate the grievance "unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be in favor of coverage.") (internal citations and quotation marks omitted). Despite the presumption in favor of arbitration, however, a party cannot be compelled to arbitrate "any dispute that the party has not agreed to so submit." *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003).

Before compelling an unwilling party to settle a dispute by arbitration, the Court must apply a two-part test "to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties, and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624. Although the FAA "preempts state laws and policies regarding arbitration," in determining whether a valid agreement to arbitrate exists between the parties, the Court should apply state contract law, "provided the contract law applied is general and not specific to arbitration clauses." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392–93 (6th Cir. 2003) (citing *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996)). The Sixth Circuit has recognized, however, that even when applying state-law principles of contract interpretation, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Bratt Enters., Inc.*, 338 F.3d at 613 (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989)). The court then "shall order arbitration upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Rent-A-Center*, 561 U.S. at 68 (quoting 9 U.S.C. § 4) (internal quotations omitted).

Finally, in evaluating motions to compel arbitration, "Courts treat the facts as they would in ruling on a summary judgment." *Diversicare Leasing Corp. v. Hutchinson*, Civil Action No.

8

17-42-HRW, 2018 WL 771320, at *2 (E.D. Ky. Feb. 7, 2018) (quoting *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 864 (N.D. Ohio 2013)). Accordingly, the party opposing arbitration must show "a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The party opposing arbitration also has an evidentiary burden of demonstrating that the arbitration agreement itself, rather than the contract in which it is found, is unenforceable. *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000). In doing so, the party "seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Id.*; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

The arbitration clause in question is located at Article 7 of the Agreement. [R. 9-2 at 27.] Specifically, it states:

> If any controversy, dispute, or claim ("Dispute") between the Parties arises out of or relates to this Agreement, which the Parties cannot settle by good faith negotiation between them during the time frames set forth herein, the Parties agree that the Dispute shall be resolved by mediation or arbitration. Financial issues that cannot be resolved between the Parties within thirty (30) Days of the identification of the issue by either Party shall proceed directly to arbitration.

*Id*. The parties do not contest that, on its face, this is a valid arbitration agreement. First, the contract itself is valid. In Kentucky, a valid contract must have an offer, an acceptance, "full and complete terms," and sufficient consideration. *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013). Neither party asserts that the Agreement lacks one of these elements. In order to show validity of an arbitration agreement, Kentucky law provides for a burden-shifting framework: the party seeking arbitration satisfies its prima facie burden by simply providing a copy of the written and signed arbitration agreement, then the burden shifts to the opposing party to show a lack of an agreement. *MHC Kenworth–Knoxville/Nashville v. M & H Trucking, Inc.*, 392 S.W.3d 903, 906 (Ky. 2013). CGI has provided the Agreement. [R. 9-2.]

9

The Liquidator argues there was no agreement to arbitrate disputes post-liquidation. [R. 73 at 28.]

## 2

According to the Liquidator, the parties agreed the contract would be governed and construed according to Kentucky state law, and therefore, the agreement is covered by Kentucky law and Kentucky Insurance requirements. [R. 9-2 at 25.] Under Kentucky law, the Liquidator argues, post-liquidation arbitration is barred by the IRLL. [R. 73 at 31–32.] The Court is not persuaded. The Liquidator does not point to, and the Court cannot find, a provision in the IRLL expressly banning arbitration proceedings. The Court does not question that the parties expected and intended for Kentucky and the IRLL to govern the Agreement. [R. 73 at 32.] However, nothing in the agreement or in the IRLL prohibits Franklin Circuit Court from ordering arbitration of claims once a company begins liquidation proceedings. Furthermore, even if the IRLL did prohibit arbitration post-liquidation, the choice-of law provision does not incorporate a state's restrictions on arbitration clauses. "Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64 (1995). Had CGI and KYHC intended to limit the scope of their arbitration agreement and exclude conflicts that arose post-liquidation, they must have clearly stated, in the agreement, their intent to do so. *Ferro Corp. v. Garrison Indus. Inc.*, 142 F.3d 926, 938 (6th Cir. 1998). The Agreement contains no such limiting clause. Accordingly, the Court finds that the arbitration clause in the Agreement is valid and enforceable as to disputes arising under the Agreement.

The next question is whether this dispute falls within the substantive scope of the Agreement. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Here, the arbitration clause is broad: "If any controversy, dispute, or claim ("Dispute") between the Parties arises out of or relates to this Agreement . . . the Parties agree that the Dispute shall be resolved by mediation or arbitration." [R. 9-2 at 27.] Thus, absent an express provision in the agreement excluding a specific dispute, and absent "forceful evidence" that the parties intended to exclude a specific dispute, the dispute is governed by the arbitration clause. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003).

The underlying dispute includes claims by the Liquidator that CGI breached the Agreement, a dispute that clearly relates to the Agreement. Further, no language in the Agreement and no evidence provided by the parties display an intent to exclude breach of contract claims from the arbitration requirement. However, the Liquidator also claims that the Court cannot compel arbitration of the preferential transfer claims. The Liquidator compares this matter to several wrongful death actions, claiming that only the Liquidator, not KYHC, can bring a preferential transfer claim, similar to how only the estate of a deceased, not the deceased himself, can bring a wrongful death action. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 196 (6th Cir. 2016); *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 595 (Ky. 2012). In these cases, the families of the deceased were not bound to arbitrate their wrongful death claims because they were not parties to the arbitration agreement.

While sharing some similarities, a liquidation action is different from a wrongful death action. The Liquidator is correct, the estate of a deceased person cannot bring a wrongful death claim because the essence of that suit is the wrongful loss of a loved one. Thus, close relatives, not the estate, brings these claims, and the monetary judgment goes directly to those relatives, not the estate. *Ping*, 376 S.W.3d at 597. Here, however, though the preferential transfer claims cannot be brought by the insolvent company, the monetary judgment is paid to the company's assets, not the Liquidator. Family members suing for wrongful death sue on behalf of themselves, not on behalf of the deceased. *Id*. The Liquidator sues on behalf of the insolvent company and does not receive a personal benefit from a favorable result.

Furthermore, though not a signatory to the arbitration agreement, the Liquidator has sued CGI for breach of contract, seeking a direct benefit from the Agreement between KYHC and CGI. The Sixth Circuit has previously held that "a nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a direct benefit from the contract while disavowing the arbitration provision." *Javitch*, 315 F.3d at 629. Simply put, the Liquidator cannot pick and choose pieces of the contract to which she wants to be bound. Because the Liquidator has sued under a breach of contract theory, she is also bound to the arbitration clause. Accordingly, the Court finds that the dispute falls within the substantive scope of the Agreement. *See Javitch*, 315 F.3d at 624.

**D**

In the alternative, the Liquidator requests this Court stay the current matter pending resolution of the liquidation proceeding in Franklin Circuit Court. The Liquidator offers two separate theories: abstention under the principles of *Colorado River Water Conservation Dist. v.*

*United States* or abstention under the principles of *Younger v. Harris*. However, neither abstention doctrine is applicable in this case.

**1**

The Supreme Court of the United States, in *Younger v. Harris*, created an abstention doctrine prohibiting federal courts from enjoining state court proceedings. 401 U.S. 37 (1971). In recent years, the Supreme Court has limited the *Younger* abstention to three circumstances: (1) ongoing state criminal prosecutions, (2) ongoing state-initiated civil enforcement proceedings "that are akin to criminal prosecutions," and (3) ongoing state civil proceedings that involve the ability of courts to perform judicial functions. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S.Ct. 584, 588 (2013); *New Orleans Public Service, Inc. (NOPSI) v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989). In addition, administrative proceedings that are judicial in nature are considered "state-initiated civil proceedings" for the purpose of determining whether *Younger* abstention applies, even if the case has not yet progressed to state-court at the time of federal review. See *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 627 (1986); *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432–34 (1982); *Gibson v. Berryhill*, 411 U.S. 564, 576–77 (1973). Without these "exceptional" circumstances, a pending state court action is not a bar to federal jurisdiction. *Id*. (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).

Once a proceeding fits into one of the three categories outlined in *Sprint Commc'ns, Inc.* or *NOPSI*, a court turns to a three-factor test, defined in *Middlesex County Ethics Committee*, to determine whether *Younger* abstention may occur. *See Sprint Commc'ns, Inc.*, 134 S.Ct. at 593–94. Abstention is proper when "(1) state proceedings are currently pending; (2) the proceedings

involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims." *Doe v. Univ. of Ky.*, 860 F.3d 365, 369 (6th Cir. 2017) (citing *Middlesex*, 457 U.S. at 432–34).

The Liquidator jumps straight to addressing the *Middlesex* three-factor test, without addressing whether this is a circumstance where *Younger* abstention is appropriate. [R. 73 at 25.] First, *Gaither v. Beam* is clearly not an ongoing state criminal prosecution: it is a liquidation proceeding. Nor is *Gaither v. Beam* a state-initiated civil enforcement proceeding akin to a criminal prosecution. See *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975); *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977); *Moore v. Sims*, 442 U.S. 415, 423 (1979). Thus, the only way *Younger* abstention could apply is if this involved "certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *NOPSI*, 491 U.S. at 368.

This third category, which encompasses "important judicial interests," is very narrow. The Supreme Court has applied *Younger* abstention to cases where parties sought injunctive relief against a state court order. For example, in *Juidice v. Vail*, the plaintiffs sought an injunction against an order holding them in contempt of state court, and the Supreme Court found that the federal district court must abstain under *Younger*. 430 U.S. 327 (1977). Similarly, in *Pennzoil Co. v. Texaco, Inc.*, Pennzoil sued Texaco over a breach of contract in Texas state court. 481 U.S. 1, 4 (1987). Texaco sought to appeal, but under Texas law, Texaco had to post bond in excess of $13 billion. *Id*. at 5. Texaco sued in federal court, claiming the process violated its rights and asked the district court to enjoin Pennzoil from enforcing the judgment. *Id*. at 6. Again, the Supreme Court found that the federal courts must abstain under *Younger*.

14

In this matter, neither party has requested an injunction against an order of Franklin Circuit Court. [R. 75 at 20.] While there may be state interests that support abstention, abstention is an extraordinary remedy, only to be exercised when a case presents an enumerated "exceptional circumstance." *See Sprint*, 571 U.S. at 73. The Court finds none of those circumstances here, and accordingly, declines to abstain under *Younger*.

**2**

The Supreme Court has recognized that situations exist where a federal court should abstain from exercising jurisdiction over a case that "involves substantially the same issues and substantially the same parties as a parallel case in state court." *Total Renal Care, Inc. v. Childers Oil Co.*, 743 F.Supp.2d 609, 612 (E.D. Ky. 2010) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–21 (1976)). However, because "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress," *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996), abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813 (quoting *Cty. Of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)); *see also Gray v. Bush*, 628 F.3d 779, 783 (6th Cir. 2010). For this reason, "Only the 'clearest of justifications' will support abstention." *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013) (quoting *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002)).

In order to determine whether abstention under *Colorado River* is appropriate, the Court must first determine whether there are parallel actions proceeding in both state and federal courts. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). If "the parities are substantially similar," and "the claims raised in both suits are predicated on the same allegations

15

as to the same material facts," the actions "will come close enough to count as parallel." *Preferred Care of Del., Inc. v. VanArsdale*, 676 F. App'x 388, 393 (quoting *Romine*, 160 F.3d at 340). The Liquidator claims this matter is parallel to *Gaither v. Beam* in Franklin Circuit Court because the allegations, facts, and issues are nearly identical. [R. 73 at 18.] While the subject of arbitration does not foreclose abstention under *Colorado River*, the parallel cases of *Preferred Care of Delaware* both turned on the same legal question: if, under the alternative dispute resolution agreement, VanArsdale had to arbitrate his claims against Preferred Care. *Preferred Care*, 676 F. App'x at 394. The Court agrees. Both here and in *Gaither v. Beam*, the initial question involves the enforceability of the arbitration clause. This finding, however, does not end the analysis. When actions are parallel, the Court must then balance eight separate factors to determine whether abstention would be appropriate:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained . . . (5) whether the source of governing law is state or federal . . . (6) the adequacy of the state court action to protect the federal plaintiff's rights . . . (7) the relative progress of the state and federal proceedings . . . and (8) the presence or absence of concurrent jurisdiction . . . .

*Romine*, 160 F. 3d at 340–41. These factors are not a checklist, but rather considerations for the Court when using its discretion to abstain in a matter.

First, the Court has already determined that this action does not involve res or property. The res involved in the liquidation proceedings in Franklin Circuit Court are not at issue in this case. Additionally, the federal forum is located less than a quarter of a mile from the state forum, providing no more or less convenience to the parties. Furthermore, the state court action would not adequately protect Beam Partners' rights, given that Kentucky precedent is dictated by

*Ernst & Young*, which allows for reverse preemption of the FAA and denial of Beam Partners' petition for arbitration. Thus, the first, second, and sixth factors squarely oppose abstention.

Factors three, four, and seven relate to the parallel proceeding in state court. Here, there is no danger of piecemeal litigation. While similar, the contracts involved in *Gaither v. Beam* are all different, and all include different provisions and protections. Resolving the contract dispute between the Liquidator and CGI does not impact the resolution of other disputes and brings no danger of disparate judgments. Again, arbitration in this matter does not affect the liquidation proceedings and the policy holders. Thus, because there is no danger of piecemeal litigation, the third factor does not encourage abstention.

While Franklin Circuit Court first obtained jurisdiction, the primary focus of the litigation in the parallel proceeding has concerned the liability of Janie Miller and Joseph Smith, neither of which are a party to this matter in federal court. [R. 73 at 22.] This Court has spent the last two years hearing oral arguments and conducting briefing on this specific arbitration issue, while the parties provide no indication that the Franklin Circuit Court has begun to consider it. *Id.* So, while factor four favors abstention, the time spent debating this issue in federal court far exceeds the time devoted to this issue in state court, and factor seven strongly weighs against abstention. Factors five and eight relate to the jurisdiction and choices of law in both forums. Both forums have concurrent jurisdiction, and both courts could rule on the enforceability of arbitration. The issues relating to contract law and the IRLL are matters of Kentucky law, while the questions involving the McCarran–Ferguson Act and the FAA are matters of federal law. The Franklin Circuit Court could certainly rule on this issue, but so can this Court. Such factors do not clearly support abstention.

Without the "clearest of justifications" that abstention is proper, the Court has a duty to exercise the jurisdiction conferred upon it by Congress. *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). After weighing all eight factors, only factor four suggests abstention is appropriate, while several other factors strongly oppose abstention. Accordingly, the Court finds that the narrow exception to jurisdiction provided by Colorado River abstention does not apply to this matter.

E

Finally, having determined that the Liquidator's claims are subject to arbitration, this matter must be stayed pursuant to 9 U.S.C. § 3. Further, the Court will stay the pending state court proceedings against CGI. Pursuant to the Anti–Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (emphasis added). As has been found by many other Courts in this district confronting the identical situation, an injunction is proper in these circumstances because it is "necessary to protect or effectuate [this Court's] judgments." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 894 (6th Cir. 2002); see also *Brookdale Senior Living, Inc. v. Caudill*, No. CIV.A. 5:14-098-DCR, 2014 WL 3420783, at *10 (E.D. Ky. July 10, 2014); *Brookdale Sr. Living Inc. v. Stacy*, No. CIV.A. 5:13-290-KKC, 2014 WL 2807524 at *792 (E.D. Ky. June 20, 2014); *Brookdale Senior Living Inc. v. Hibbard*, No. CIV.A. 5:13-289-KKC, 2014 WL 2548117, at *10 (E.D. Ky. June 4, 2014); *GGNSC Vanceburg, LLC v. Hanley*, No. CIV.A. 13-106-HRW, 2014 WL 1333204, at *10 (E.D. Ky. Mar. 28, 2014); *GGNSC Vanceburg, LLC v. Taulbee*, No. 5:13-CV-71-KSF, 2013 WL 4041174, at *11 (E.D. Ky. Aug. 7, 2013), *appeal dismissed* (Mar. 13, 2014).

## III

This court has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). Absent "exceptional circumstances," the Court has a duty to exercise its jurisdiction, and no such circumstances occur in this case. Nor does the Liquidator present any other situation where abstention or dismissal is appropriate here. The parties agreed to arbitrate and are thus bound by their contract. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Motion to Compel Arbitration by Petitioner CGI Technologies & Solutions, Inc. [**R. 71**] is **GRANTED**;

2. The Liquidator's Motion to Dismiss [**R. 73**] is **DENIED**;

3. The Liquidator is hereby **COMPELLED** to resolve her claims in arbitration;

4. Pursuant to 9 U.S.C. § 3, further proceedings in this matter are **STAYED** pending arbitration; and

5. The State Court matter, insofar as it relates to the claims between the Liquidator and CGI Technologies & Solutions, Inc., is **STAYED** pending arbitration.

This the 11th day of September, 2018.

Gregory F. Van Tatenhove
United States District Judge